**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MARIE DUGAS, ET AL.** | **CIVIL ACTION NO. 6:12-cv-02885** |
| **VERSUS** | **JUDGE RICHARD T. HAIK** |
| **MERCEDES-BENZ USA, L.L.C., ET AL.** | **MAGISTRATE JUDGE HANNA** |

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF RULE 37 MOTION TO COMPEL 30(B)(6) DEPOSITION**

DUCK LAW FIRM, L.L.C.
KEVIN R. DUCK (23043)
5040 Ambassador Caffery Parkway
Ste. 200
Lafayette, La 70508
Telephone: 337-406-1144
Facsimile: 337-406-1050
Krd@ducklawfirm.com

WHALEY LAW FIRM
JOHN RANDALL WHALEY (25930)
3112 Valley Creek Drive, Ste. D
Baton Rouge, La 70808
Telephone: 225-302-8810
Facsimile: 225-302-8814
Jrwhaley@whaleylaw.com

**Attorney for the plaintiffs**

## Table of Contents

| | Page |
|---|---|
| Table of Contents | ii |
| Table of Authorities | iii |
| Facts | 1 |
| Law and Argument | 7 |
| Conclusion | 10 |
| Certificate | 11 |
| Attachments | |
| Exhibit 1- *October 7, 2013 Letter to Magistrate Hanna* | 2 |
| Exhibit 2 - *July 27, 2013 Notice of 30(b)(2) and 30 (b)(6) Depositions* | 2 |
| Exhibit 3 - *Deposition of Daniel Edwards* | 3, 8 |
| Exhibit 4 - *Deposition of Theodore Vaughan* | 3, 8 |
| Exhibit 5 - *March 28, 2014 Letter to Gabriel Crowson* | 4 |
| Exhibit 6 - *Deposition of Lars Anderson* | 4, 5, 7, 8 |
| Exhibit 7 - http://www.mbusa.com/mercedes/about_us/companyinfo) | 7 |
| Exhibit 8 - http://www.emercedesbenz.com/autos/mercedes-benz/corporate-news/stephen-cannon-named-mercedes-benz-usa-president-and-ceo | 8 |
| Exhibit 9 - http://www.daimler.com/company/daimler-worldwide/north-and-central-america | 8 |

## Table of Authorities


| **Cases** | **Page** |
|---|---|
| *General Cigar Co. V Cohiba Caribbean's Finest, Inc.*, 2007 WL 983855 (D.Nev. 3/30/2007) | 7 |
| *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D.Fla. 2005) | 7 |
| *Continental Ill. Nat'l Bank & Trust Co. v. Caton*, 136 F.R.D. 682, 684 (D.Kan. 1991) | 7 |
| *Miller v. Doctor's Gen'l Hosp.*, 76 F.R.D. 136, 140 (W.D.Okla. 1977). | 7 |
| *Marker v. Union Fidelity Lift Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989) | 9 |
| *Briddell v. St. Gobain Abrasive, Inc.*, 233 F.R.D. 57, 59 | 9 |
| *United States v. Taylor*, 166 F.R.D. 356, 361 | 9 |
| **Federal Rules** | |
| *Fed. R. Civ. P. 30(b)(2)* | 1-4,9-10 |
| Fed. R. Civ. P. 30(b)(6) | *1-4,6,9-10* |
| *Fed. R. Civ. P. 34(a) 7* | 8 |
| Fed. R. Civ. P. 37 | 1,6,10 |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MARIE DUGAS, ET AL.** | **CIVIL ACTION NO. 12-2885** |
| **VERSUS** | **JUDGE RICHARD T. HAIK** |
| **MERCEDES-BENZ USA, L.L.C., ET AL.** | **MAGISTRATE JUDGE HANNA** |

**MEMORANDUM IN SUPPORT OF**
**RULE 37 MOTION TO COMPEL30(B)(6) DEPOSITION**

**MAY IT PLEASE THE COURT:**

MARIE DUGAS and KRYSTAL DORSEY (hereinafter sometimes collectively referred to as Plaintiffs), who respectfully move for this Honorable Court to compel the defendant, Mercedes Benz USA, L.L.C. (Hereinafter referred to as MBUSA) s to fully respond to discovery requests, make available for deposition, at their costs, 30(b)(6) representatives who are qualified and competent to answer questions material to this case as outlined in plaintiffs 30(b)(2) and 30(b)(6) deposition notices and to compel the defendants to pay sanctions, attorney fees and costs for their failure to provide full discovery responses and failing to provide 30(b)(6) representatives that were qualified to testify to those matters set forth in the Rule 30(b)(6) Deposition Notice, for those reasons set forth herein:

**FACTS:**

Original suit was filed in Lafayette Parish, Fifteenth Judicial District Court on December 8, 2010 . The subject matter of the lawsuit revolves around the premature wear of a balance shaft gear and parts contained in the M272 engine which is manufactured by Mercedes Benz and equipped in

several models. Since the initial inception of this case, counsel for the defendants have obstructed the discovery process. As the Court will recall, plaintiffs attempted to coordinate a 30(b)(6) deposition associated with a 30(b)(2) notice. Receiving no cooperation from the defendant the deposition was noticed and not until the eve of the deposition did the defendant advise that no documents would be produced. As the Court will recall this chain of events was documented and brought to the Court's attention on October 7, 2013. (Exhibit 1). The aforementioned prompted a conference which was held on October 17, 2013. At the conference the defendants advised that they would identify and make available for deposition those person(s) most knowledgeable about the issues arising with the balance shaft sprocket and corresponding DTB. The Court discussed the scope of discovery with respective counsel, which included the production of documents identified in the 30(b)(2) and 30(b)(6) notice of deposition that were served upon MBUSA on July 27, 2013. (Exhibit 2).

MBUSA identified those witnesses most knowledgeable about the issues arising with the balance shaft sprocket and corresponding DTB as Dan Edwards, Theodore Vaughan and Lars Anderson. Mr. Anderson was designated as MBUSA 30(b)(6) corporate representative in response to the Notice of 30(b)(6) representative. Notices of Depositions were issued with regards to the depositions of Messrs. Edwards, Vaughan and Anderson. (Exhibit 2). On or about February 26, 2014, counsel for the plaintiffs, John R. Whaley and Kevin R. Duck traveled to Montvale, New Jersey for the purpose of conducting the depositions of Edwards, Vaughan and Anderson.

Dan Edwards was the first person deposed on February 27, 2014. Mr. Edwards, who was **designated by the defendants as most knowledgeable with regards to warranty issues** dealing with the balance shaft issues had no knowledge of emails from servicing engineers to other members

of the warranty department concerning warranty issues as it related to the premature wear of the balance shaft. Edwards revealed that his preparation for the deposition consisted of meeting with his attorney for a couple of hours to look over the complaint, deposition notice and spreadsheet of some claims. (Exhibit 3 - Edwards deposition page 9 lines 1-20). Other than general warranty information about Mercedes products, Mr. Edwards was not informed and did not take any measures to inform himself about information relevant to the lawsuit.. When asked of his understanding of what the lawsuit is about he replied " The only thing I can go on is—from looking at the complaint is that I guess your customer or client had to pay for a balance shaft repair outside the warranty, and your guys feel that they shouldn't have had to." (Exhibit 3 page 59 lines 2-9)

The plaintiffs then proceeded to depose Mr. Theodore Vaughan. Mr. Vaughan is a product analysis engineer with MBUSA. His job is to research and investigate issues, including part failures, at the request of the legal department. He was employed by MBUSA in August of 2011. In this case he assisted the legal department at their request for discovery responses. Mr. Vaughan collected all of the DTB documents from service engineers. Ironically, despite being a product analysis engineer he was not asked to analyze the defective part and had no knowledge of the part, the suit and/or anything else relevant to the case other than telling us who he collected the DTB documents from. When he was asked what did he do in regards to this case, his response was "I assisted the legal department at their request for the discovery responses." (Exhibit 4 page 18 lines -25).

On the 28th of February, MBUSA's designated 30(b)(6) deponent, Lars Anderson, testified. The documents to be produced in connection with 30(b)(2) notice and the scope of the 30(b)(6) deposition were as follows:

The 30(b)(2) Notice requested the production of: ("B. All documents, data, testing, analysis,

statistical data, reporting history and other information that was used to assess, analyze, test and/or determine the reason(s) and/or cause(s) for the need for issuance of such bulletin(s)...." and "C. **All documents, data, testing, analysis, statistical data, reporting history and other information that was used to assess, analyze, test and/or determine the reason(s) and/or cause(s) for the failure(s) of the parts identified in the bulletin(s)....."**

The 30(b)(6) Notices identified the scope of the examination to include "1. **History that lead to the creating of the bulletin(s)..."; "3. Investigation and all underlying data that lead to the need for and creating of the bulletin(s), as described in A.." ; "4. All empirical and measurable evidence collected pertaining to the bulletin(s)..." and "5. All data, testing, analysis, statistical data, reporting history that was collected to access, analyze, test and./or determine the reason(s) and/or cause(s) for the failure of the part(s) identified in the bulletin.**(Exhibit 5 in globo).

Lars Anderson's preparation for his 30(b)(6) deposition was limited to review the DTBs and review the documentation pertaining to the deposition process. Anderson did not review any documents other than the DTB's, Notice of Deposition, Notice of Federal Rule of Civil Procedure 30(b)(2) and 30(b)(6) depositions. (Exhibit 6 Page 38 lines 19-23), some emails from Denise Giovatto and a PDF regarding a GI issued by Daimler. (Exhibit 6 Page 41 lines 14-18). **He did not speak with any MBUSA employees to prepare for his deposition** (other than attorneys). Exhibit 6 page 38 lines 24-25; page 39 lines 1-4). He did not review any discovery in the case. (Exhibit 6 page 39 lines 2-4). He did not review nor did the defendants provide relevant GI documents at the deposition. He could not provide the original history of the DTB. He essentially limited his information that he could discuss to the time of his "involvement with the DTB" from March 26,

2008 through October 24, 2008.[1]

The lack of knowledge and preparation by Mr. Anderson on the most critical issues is evidenced by his testimony as follows:

- Anderson admits that during his tenure as staff engineer on occasion there was information provided by Daimler as to a failure analysis performed by Germany. He had no independent knowledge as to whether one was or was not performed by Daimler concerning the balance shaft. (Exhibit 6 page 26 lines 6-25).

- Regarding DTB dated June 17, 2009, Mr. Anderson demonstrates his lack of knowledge regarding the information contained in the DTB's and further testifies that he made no efforts in preparation of his deposition to be informed in order to testify as to relevant information pertaining a critical issue within the DTB. Mr. Anderson was questioned as to what change in material was made with respect to the balance shaft sprocket. His response: "I don't know".(Exhibit 6 page 33 lines 4-6). "My understanding of the change is what was listed in the subsequent documentation. The material was updated, the material was changed, the range of the engine. **That's the extent, and I never pursued it because I did not have an interest**. Exhibit 6 page 36 lines 8-13.)

- Mr. Anderson testified that Daimler issued GI documents that preceded DTB's and provided more technical data.( Exhibit 6 page 127 lines 8-9). However, the GI documents were not produced at the deposition and Mr. Anderson did not review the GI depositions in advance of the deposition. Failed to supplement or produce ( Exhibit 6 page 181 lines 1-16; page 184 lines 23-25; page 185 lines 1-7).

- Mr. Anderson indicates to the warranty department that there is premature wear in the balance shaft gear. This email is generated after a discussion with a Daimler employee in Germany named Tuncay in Global Service Parts (GSP). When questioned about the nature and origins of the description, Anderson takes the expected route of protecting his employment by saying that was just a bad choice of words and cannot expound any further with regards to the "wear expectancy" of the balance shaft gear. (Exhibit 6 Page 129 lines 4-25).

- Anderson admitted that he had not reviewed emails from MBUSA engineers concerning the frequency of the balance shaft repairs (40,000 cases from November of 2008 to May of 2009) (Exhibit 6 page 152 lines 21-25; page 153 lines 1-14).

---

[1]The DTB's provided range from August 23, 2008 through June of 2009 and admittedly there are additional documents prepared regarding the balance shaft sprocket repair subsequent to June of 2009.

As to all questions posed to Mr. Edwards, Mr. Vaughan and Mr. Anderson concerning the origin of the DTB, the identification of an existing defect, the investigation to determine the cause for the failure of the balance shaft, the composition of the balance shaft gear, the change in material of the balance shaft gear as noted in the June 2009 DTB, the "wear expectancy" of the balance shaft sprocket, the witnesses testified they had no knowledge and that information would come from Daimler in Germany. The responses were obviously well coached and consistent with the mantra of MBUSA that we are not the manufacturer and thus not privy to that information.

Plaintiffs counsel addressed the shortcomings of the 30(b)(6) deposition by correspondence on March 28, 2014 and requested that MBUSA identify those persons who can respond to the relevant issues in this matter, specifically those issues and inquires identified in the 30(b)(6) Notice, identified in the pleadings and those posed at the depositions of Lars Anderson. The defendants responded rejecting plaintiffs pleas and asserting that they were under no obligation to provide a deponent for a topic it has no knowledge. Further attempts to schedule depositions were suspended pending an opportunity to address the 30(b)(6) deposition as plaintiffs anticipated that they would waste additional monies to depose witnesses who had been woodshedded to feign ignorance as to any and all questions regarding manufacturing and/or identification and/or investigation of defects of the balance chain sprocket.

In light of the conference held by the Court, and in another attempt to reach an amicable resolution regarding a supplemental 30(b)(6) deposition and to comply with the confer requirements of Rule 37, plaintiffs counsel contacted counsel for MBUSA, Mr. Stegeman who reiterated MBUSA's prior position with regards to the 30(b)(6) deposition. Thus, plaintiffs were forced to file this Motion to Compel.

**LAW AND ARGUMENT:**

MBUSA has access to the investigation to determine the cause for the failure of the balance shaft, the composition of the balance shaft gear, the change in material of the balance shaft gear as noted in the June 2009 DTB, the "wear expectancy" of the balance shaft sprocket. Thus MBUSA cannot limit their answers to their own knowledge and ignore information available to them. ".....Thus, [t]he **answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control**. **The answering party is required to give information available to him, including information available to his agents or representatives whether personally known to the answering party or not**. If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information. *General Cigar Co. v. Cohiba Caribbean's Finest, Inc.*, No. 2:06-cv-00575-BES-GWF, 2007 WL 983855, at *3 (D.Nev. Mar.30, 2007) (citing *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D.Fla.2005); *Continental Ill. Nat'l Bank & Trust Co. v. Caton,* 136 F.R.D. 682, 684 (D.Kan.1991); *Miller v. Doctor's Gen'l Hosp.*, 76 F.R.D. 136, 140 (W.D.Okla.1977)). Further, with respect to documentation, a party responding has an obligation to produce those materials "which are in their possession, custody or control. *Fed.R.Civ.P. 34(a).*

MBUSA has access to Daimler AG. MBUSA is not simply a small parts distributor who is at the mercy of Daimler as opposing counsel would have us all believe. MBUSA is part of Daimler AG and is responsible for the distribution and marketing of Mercedes-Benz. (Exhibit 7 - **http://www.mbusa.com/mercedes/about_us/companyinfo).** The ties and the ties of the companies are further evidenced by Daimler Board of Management appointing Stephen Cannon as Mercedes-

Benz, USA president and CEO. Mr. Cannon was in Stuggart (home to Daimler) where he was part of a team that developed, manufactured and launched the M-class. (Exhibit 8 - http://www.emercedesbenz.com/autos/mercedes-benz/corporate-news/stephen-cannon-named-mercedes-benz-usa-president-and-ceo/). Daimler identifies on its website locations in the USA to include Montvale, Mercedes-Benz USA, LLC which has the same name of the defendant in these proceedings and located at the same address. (Exhibit 9 - http://www.daimler.com/company/daimler-worldwide/north-and-central-america). Suggesting that MBUSA does not have the information plaintiff seeks and/or that said information is not within their control to retrieve is simply a fraud upon the Court.

It is evident from the testimony of Edwards, Vaughan and Anderson that MBUSA has access to technical information sought and that Daimler has had insolvent in these proceedings with regards to discovery sought.

- Anderson testified that he did in fact have communications with Daimler in Germany relative to repairs identified in the DTB. (Exhibit 6 page 116 - 119).

- In an email, Mr. Anderson indicates to the warranty department that there is premature wear in the balance shaft gear. This email is generated after a discussion with a Daimler employee named Tuncay in Global Service Parts (GSP). When questioned about the nature and origins of the description,(Exhibit 6 page 129 lines 4-25).

- Anderson testifies that he was in Germany for discussions about the balance shaft failure and solenoid replacement identified in DTB . (Exhibit 6 Page 138 lines 1-18).

- Anderson confirms an email authored by senior staff engineer in servicing engineering that there had been 40,000 cases regarding the DTB for the balance shaft repair from November of 2008 to May of 2009 and that Daimler was trying to keep a lid on it and was keeping a close eye.

- Mr. Anderson testified that service engineering at MBUSA handles the technical aspects of the car including things identified in the DTB and that the service engineering department at MBUSA has access to Daimler. (Page 172 lines 19-25;

page 173 lines 1-12).

- Mr. Edwards testified that he has a counterpart at Daimler in Germany that he converse with back and forth pertaining to warranty issues. (Exhibit 3 page 37 lines 2-21).

- Mr. Vaughan testified that he communicates with Rene Ham who is an employee at Daimler in Germany as it relates to case investigation at the request of the legal department. (Exhibit 4 page 29 lines 14-25; page 30 lines 1-9.). Mr. Vaughan, after much objection and many evasive answers, testified that he is aware of Daimler giving documents to MBUSA regarding vehicle specification (how car is built and materials involved in construction of auto). (Exhibit 4 page 32 lines 1-25; page 33 lines 1-25; page 34 lines 1-14).

MBUSA designated Edwards, Vaughan and Anderson to testify. MBUSA identified person(s) with little or no knowledge pertaining to the critical issues in this matter and/or those issues, topics and documents set forth in plaintiffs 30(b)(2) notice and 30(b)(6) scope of deposition. MBUSA clearly failed to prepare the designated witnesses, including the 30(b)(6) witness to address the matters set forth in the 30(b)(2)(6) notices. MBUSA is required to not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable, and binding answers on behalf of the corporation. *Marker v. Union Fidelity Life Insurance Company*, 125 F.R.D. 121 (M.D.N.C. 1989). A corporate deposition notice places the burden upon the deponent to make a conscientious, good faith endeavor to prepare its designees in order that they can "answer fully, completely, and unevasively." *Briddell v. St. Gobain Abrasives, Inc.*, 233 F.R.D. 57, 59. The duty of preparation goes beyond matters personally known to that designee or to matters in which that designees was personally involved. *United States v. Taylor*, 166 F.R.D. 356, 361. If necessary, the deponent must use documents, past employees and other resources in performing this required preparation. Id.

**CONCLUSION:**

Plaintiffs seek an Order pursuant to Rule 37 compelling MBUSA to produce 30(b)(6) representative(s) who are prepared to testify as to the scope of the 30(b)(6) deposition and content of 30(b)(2) notice, to include the construction, composition and design of the balance shaft sprocket and the origins of the DTB's concerning the balance shaft in the M272 engines and the cause analysis performed by Daimler to determine the cause of the failure in the balance shaft sprocket. Plaintiffs seek a discovery extension to allow for the 30(b)(6) deposition and additional time if necessary depending upon the information provided therein. Plaintiffs further pray that pursuant to Rule 37 that this 30(b)(6) deposition be at the cost of the defendant, MBUSA, to include airfare, lodging and travel expense to New Jersey if the defendants desire the deposition(s) to take place in the same location.

DUCK LAW FIRM, L.L.C.
Kevin R. Duck
KEVIN R. DUCK (23043)
5040 Ambassador Caffery Parkway
Ste. 200
Lafayette, La 70508
Telephone: 337-406-1144
Facsimile: 337-406-1050
Krd@ducklawfirm.com

WHALEY LAW FIRM
JOHN RANDALL WHALEY (25930)
3112 Valley Creek Drive, Ste. D
Baton Rouge, La 70808
Telephone: 225-302-8810
Facsimile: 225-302-8814
Jrwhaley@whaleylaw.com

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the Western District of Louisiana by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system, this 10th day of June, 2014.

Kevin R. Duck
KEVIN R. DUCK